**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Stephanie Lynn Ankrom, Administrator of the Estate of Forest M. Touchberry, deceased, | : CIVIL ACTION<br>:<br>: TRIAL BY JURY DEMANDED<br>: NO. _____<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| Lehigh County<br>17 South 7th Street<br>Allentown, PA 18101 | :<br>:<br>:<br>: |
| Corrections Officer John Doe<br>38 North Fourth Street<br>Allentown, PA 18102 | :<br>:<br>:<br>: |
| PrimeCare Medical, Inc.<br>3940 Locust Lane<br>Harrisburg, PA 17109 | :<br>:<br>:<br>: |
| PrimeCare Medical Provider John Doe<br>3940 Locust Lane<br>Harrisburg, PA 17109 | :<br>:<br>:<br>: |
| Defendants. | :<br>: |

**COMPLAINT**

Plaintiff, Stephanie Lynn Ankrom, Administrator of the Estate of Forest M. Touchberry, by and through her attorneys, Laura Zipin, Esquire, and Brian J. Zeiger, Esquire, hereby alleges the following:

**JURISDICTION & VENUE**

1. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. The acts and omissions giving rise to this action occurred in Lehigh County, Pennsylvania, which lies within the Eastern District of Pennsylvania; accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff Stephanie Lynn Ankrom is the duly appointed Administrator of the Estate of Forest M. Touchberry, deceased. Letters of Administration were granted to Ms. Ankrom by the Register of Wills of Lehigh County, Pennsylvania, on August 15, 2025 (Estate No. 39-2025-1370). Ms. Ankrom is the mother of the decedent, Forest M. Touchberry.

4. Defendant Lehigh County is a municipal entity that owns, operates, controls, and promulgates the policies, customs, and practices governing the Lehigh County Jail (hereinafter the "Jail" or "LCJ"), located at 38 North Fourth Street, Allentown, PA 18102, with offices at the Lehigh County Government Center, 17 South 7th Street, Allentown, PA 18101. At all relevant times, Lehigh County was responsible for the care, custody, control, safekeeping, and protection of inmates and detainees confined at the Lehigh County Jail, including Mr. Touchberry.

5. Defendant Corrections Officer John Doe is an adult individual who, at all relevant times, was employed by Lehigh County at the Lehigh County Jail and was responsible for the supervision, monitoring, safekeeping, and protection of Mr. Touchberry. All of this Defendant's actions or inactions were taken under color of state law. This Defendant is sued in his or her individual capacity. The true identity of this Defendant is presently unknown to Plaintiff and will be substituted by amendment once ascertained through discovery.

6. Defendant PrimeCare Medical, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 3940 Locust Lane, Harrisburg, PA 17109. At all relevant times, PrimeCare Medical, Inc. was under contract with Lehigh County to provide medical, dental, and mental-health care to inmates and detainees confined at the Lehigh County Jail, including Mr. Touchberry, and was responsible for the policies, customs, practices, training, and supervision governing the

provision of such care. In performing these functions, PrimeCare Medical, Inc. acted under color of state law.

7. Defendant PrimeCare Medical Provider John Doe is an adult individual who, at all relevant times, was employed by or acted on behalf of PrimeCare Medical, Inc. and provided medical and/or mental-health care to inmates and detainees at the Lehigh County Jail, including Mr. Touchberry. All of this Defendant's actions or inactions were taken under color of state law. This Defendant is sued in his or her individual capacity. The true identity of this Defendant is presently unknown to Plaintiff and will be substituted by amendment once ascertained through discovery.

## FACTUAL BACKGROUND

8. Plaintiff re-alleges each and every averment set forth previously as if the same were set forth here in full.

9. At all times relevant to this Complaint, Forest M. Touchberry was confined as a convicted prisoner in the custody of Lehigh County at the Lehigh County Jail. As a convicted prisoner, Mr. Touchberry's conditions of confinement, and his right to be protected from a substantial risk of serious harm, are governed by the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution.

10. At all relevant times, Mr. Touchberry faced a substantial and known risk of serious harm while in the custody of Lehigh County. Specifically, Mr. Touchberry presented a known and serious risk of suicide and self-harm. On or about March 6, 2025, Mr. Touchberry covered the window of his cell with a bed sheet, and, as a result, he was placed on lockdown status. The covering of a cell window is a recognized warning sign of suicide and self-harm and conceals the occupant of the cell from view, thereby requiring heightened observation and monitoring of the inmate.

11. Prior to March 13, 2025, the Defendants knew or should have known of the substantial risk of serious harm to Mr. Touchberry. The Defendants knew that Mr. Touchberry had covered his cell window with a bed sheet, knew that such conduct was a recognized indicator of a risk of suicide and self-harm, and for that very reason placed Mr. Touchberry on lockdown

status. Because of that known risk, the Defendants were required to conduct mandatory checks on Mr. Touchberry no less frequently than every thirty minutes.

12. Despite their knowledge of the substantial risk of serious harm, the Defendants failed to take reasonable measures to protect Mr. Touchberry. Among other things, the Defendants failed to conduct the mandatory checks on Mr. Touchberry at least every thirty minutes as required; failed to maintain adequate visual observation of Mr. Touchberry despite knowing that his cell window was covered and that he was on lockdown status; failed to place Mr. Touchberry on suicide watch or other appropriate observation status; failed to remove the bed sheets and other items he could foreseeably use to harm himself; and failed to communicate the known risk among corrections and medical staff and across shifts.

13. On or about March 13, 2025, Forest Touchberry, then 31 years old, was found unresponsive in his cell at the Lehigh County Jail, where he was housed alone.

14. When Mr. Touchberry was discovered, he was found with a bed sheet around his neck and a bed sheet covering his cell window. More than thirty minutes had elapsed since Mr. Touchberry had last been observed by staff, and the mandatory thirty-minute checks had not been performed during that interval.

15. LCJ staff declared a medical emergency at approximately 2:45 p.m. and, notwithstanding any efforts to resuscitate him, Mr. Touchberry was transported by ambulance to St. Luke's Hospital, Sacred Heart Campus, in Allentown, Pennsylvania.

16. Mr. Touchberry was pronounced dead at St. Luke's Hospital, Sacred Heart Campus, at approximately 3:29 p.m. on March 13, 2025. The Lehigh County Coroner ruled the manner of Mr. Touchberry's death a suicide.

17. The harm that befell Mr. Touchberry was the very harm from which the Defendants were obligated to protect him, and it was reasonably foreseeable in light of the risk described above. Indeed, the Defendants had placed Mr. Touchberry on lockdown for the very conduct, covering his cell window, that signaled the risk that he would harm himself.

18. As a direct and proximate result of the Defendants' acts and omissions, Mr. Touchberry suffered conscious pain and suffering, emotional distress, fear, physical injuries, and death.

4

19. Moreover, as a direct and proximate result of the Defendants' acts and omissions, Mr. Touchberry's family suffered mental anguish and the loss of his companionship, comfort, society, financial support, and guidance.

***Prior In-Custody Deaths at the Lehigh County Jail and Notice to Defendants***

20. Upon information and belief, the death of Mr. Touchberry was not an isolated event. The Lehigh County Jail has experienced a pattern of inmate suicides demonstrating Defendants' longstanding failure to adequately protect inmates and detainees from self-harm.

21. On or about November 30, 2022, Cheryl Phillips, an inmate at LCJ, attempted suicide by throwing herself off the second tier of the prison, landing on a concrete floor, and died days later from blunt-force head injuries. Ms. Phillips had been denied her medically prescribed methadone, had detox forced upon her despite being a known suicide risk, and had been removed from psychiatric observation despite a history of suicidal ideation. The Estate of Cheryl Phillips subsequently filed a lawsuit against Lehigh County and PrimeCare Medical, Inc. alleging failure to protect and deliberate indifference to her serious medical and mental-health needs.

22. On or about August 27, 2024, Arturo Roberto Wright, an inmate at LCJ, was found unresponsive in his cell at approximately 2:12 p.m. LCJ staff administered CPR and declared a medical emergency, and Mr. Wright was transported to St. Luke's Hospital, Allentown Campus, where he was pronounced dead at approximately 2:50 p.m. The Lehigh County Coroner ruled the manner of Mr. Wright's death a suicide. Mr. Wright had been in the custody of Lehigh County for approximately two days. The Estate of Arturo Roberto Wright has asserted claims against Lehigh County and PrimeCare arising from his death.

23. On or about January 11, 2025, Joshua D. Moser, 34, was found alone and unresponsive in a single cell at LCJ. LCJ staff attempted life-saving measures, and Mr. Moser was transported to St. Luke's Hospital in Allentown, where he was pronounced dead. The Lehigh County Coroner ruled the manner of Mr. Moser's death a suicide.

24. The pattern continued after Mr. Touchberry's death. On or about June 22, 2026, Kevin M. Esterly, 53, was found unresponsive in a single cell at LCJ, hanging by a bedsheet tied to

5

his top bed bunk, and was pronounced dead at a local hospital. The Lehigh County Coroner ruled the manner of his death a suicide.

25. In connection with the renewal of PrimeCare's contract in or about the summer of 2025, Lehigh County Commissioner April Riddick publicly stated that she could not vote in favor of the contract because, in her words, "We've had three suicides under their watch." The Lehigh County Board of Commissioners tabled the vote to demand stronger oversight and reporting requirements from PrimeCare, acknowledging the need for improved mental-health services within the Jail. *See* https://www.lehighvalleypublicmedia.org/news/local/lehigh-county-reaches-deal-with-medical-company-for-care-for-inmates/.

26. In addition, in or about 2023, a separate lawsuit was filed against Lehigh County, LCJ Director of Corrections Janine Donate, and PrimeCare, alleging that a woman with bipolar disorder was held in isolation at LCJ, causing her mental health to deteriorate, and that PrimeCare failed to provide adequate mental-health treatment. *See* https://www.wfmz.com/news/area/lehighvalley/lawsuit-woman-with-mental-health-issues-kept-in-isolation-at-lehigh-county-jail/article_a0aab688-f99b-11ed-9fae-631a184519ad.html

27. Upon information and belief, PrimeCare has been the subject of numerous lawsuits, settlements, and adverse findings arising from its failure to provide adequate medical and mental-health care to inmates and detainees at county correctional facilities across Pennsylvania, including lawsuits involving inmate suicides and deaths at facilities served by PrimeCare.

28. The prior deaths of Cheryl Phillips, Arturo Roberto Wright, and Joshua Moser, each of which preceded Mr. Touchberry's death, together with the lawsuits filed against Defendants and the public commentary of the Lehigh County Coroner, County Commissioners, and community advocates, placed Defendants on actual and constructive notice of the substantial risk of inmate suicide at LCJ and of the deficiencies in their suicide-prevention policies, customs, and practices.

6

*Policies, Customs, and Practices of Defendants Lehigh County and PrimeCare*

29. Defendants Lehigh County and PrimeCare knew or should have known of the institutional deficiencies in the care and services they provided to inmates and detainees at LCJ, for whose care they were responsible.

30. At all relevant times, Defendant Lehigh County operated LCJ and contracted with Defendant PrimeCare to provide medical, mental-health, and related services to the inmate and detainee population.

31. According to the Bureau of Justice Statistics, suicide has been among the leading causes of death in local jails for more than two decades.

32. Despite this well-known risk and the pattern of suicides and litigation described above, Defendants Lehigh County and PrimeCare failed to implement and enforce adequate policies, protocols, and training to detect, monitor, and safeguard inmates and detainees at risk of suicide or self-harm.

33. Specifically, Defendants Lehigh County and PrimeCare maintained the following deficient policies, customs, and practices, which were a moving force behind the violation of Mr. Touchberry's constitutional rights:

    (a) Failing to conduct adequate intake mental-health screenings and assessments for new inmates and detainees;

    (b) Failing to conduct adequate and timely cell checks and rounds on inmates and detainees identified as at risk of suicide or self-harm;

    (c) Failing to place inmates and detainees at risk of suicide or self-harm on appropriate observation or watch status, and prematurely discontinuing such observation;

    (d) Failing to ensure that dangerous items, including items capable of being used as a ligature, were removed from cells housing at-risk inmates and detainees;

    (e) Failing to adequately staff LCJ with qualified mental-health professionals, including psychiatrists and psychologists;

(f) Failing to communicate known risk factors for suicide and self-harm among corrections officers, medical staff, and mental-health providers and across shifts;

(g) Failing to train, supervise, and discipline corrections officers and medical and mental-health staff in the identification and protection of inmates and detainees at risk of suicide or self-harm;

(h) Failing to monitor and enforce compliance with the Jail's own suicide-prevention policies and protocols; and

(i) Maintaining a policy and practice of housing inmates and detainees at risk of suicide or self-harm alone in single cells without adequate monitoring or suicide-resistant fixtures.

34. Defendants Lehigh County and PrimeCare were on notice of the deficiencies in their policies, customs, and practices by reason of the deaths of Cheryl Phillips, Arturo Roberto Wright, and Joshua Moser; the lawsuits filed against them; the public commentary of the Lehigh County Coroner, County Commissioners, and community advocates; and the well-established body of correctional best practices and national standards regarding suicide prevention in custodial settings.

35. Despite this notice, Defendants Lehigh County and PrimeCare failed to take corrective action and were deliberately indifferent to the known and obvious consequences of their policies, customs, practices, and failures to train and supervise.

## COUNT I

### FAILURE TO PROTECT
### EIGHTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF v. DEFENDANTS CORRECTIONS OFFICER JOHN DOE, PRIMECARE MEDICAL PROVIDER JOHN DOE, AND PRIMECARE

36. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

37. While in the custody of Lehigh County, Mr. Touchberry was incarcerated under conditions posing a substantial risk of serious harm to his health and safety.

8

38. The Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Mr. Touchberry existed, and they drew that inference.

39. Despite their actual knowledge of the substantial risk of serious harm, the Defendants failed to take reasonable measures available to them to abate that risk and to protect Mr. Touchberry.

40. The Defendants acted deliberately, recklessly, and with conscious and deliberate indifference to the obvious risk that Mr. Touchberry would suffer serious harm and death.

41. The acts and omissions of the Defendants served no legitimate penological purpose.

42. As a direct and proximate result of the Defendants' deliberate indifference and failure to protect, Mr. Touchberry suffered emotional injury, immense physical pain, humiliation, fear, physical injuries, and death.

**WHEREFORE**, Plaintiff claims of Defendants Corrections Officer John Doe and PrimeCare Medical Provider John Doe and PrimeCare a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, together with punitive damages, delay damages, interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and the allowable costs of suit, and brings this action to recover the same.

## COUNT II

### MUNICIPAL LIABILITY
### *MONELL* – PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF v. DEFENDANT LEHIGH COUNTY

43. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

44. Defendant Lehigh County promulgated and maintained policies, customs, and practices, as pled at length above, which were the moving force that caused the violation of Mr. Touchberry's constitutional rights.

45. Defendant Lehigh County failed to adhere to and enforce adequate protocols for detecting, monitoring, and safeguarding inmates and detainees facing a substantial risk of serious

9

harm, including required cell checks and rounds, intake and ongoing mental-health screening, appropriate placement on and discontinuation of watch protocols, removal of dangerous items, communication of risk factors among staff and across shifts, and the provision of adequate medical and mental-health care.

46. Defendant Lehigh County maintained a custom and practice of inadequately staffing LCJ with qualified mental-health professionals and of failing to ensure that corrections officers and medical staff shared critical information regarding an inmate's or detainee's known risk of suicide or self-harm.

47. Defendant Lehigh County failed to adequately train and supervise its corrections officers and medical and mental-health staff with respect to identifying and protecting inmates and detainees facing a substantial risk of serious harm, despite the obvious need for such training and supervision.

48. Defendant Lehigh County was on notice of the deficiencies in its policies, customs, and practices, including by reason of the prior in-custody deaths and lawsuits described above, yet failed to take corrective action.

49. Defendant Lehigh County was deliberately indifferent to the known or obvious consequences of its policies, customs, practices, and failures to train and supervise, namely that inmates and detainees facing a substantial risk of serious harm, including Mr. Touchberry, would be deprived of their constitutional rights and would suffer serious injury or death.

50. Had Defendant Lehigh County properly promulgated appropriate protocols, customs, and practices, and adequately trained and supervised its employees, Mr. Touchberry would have received appropriate care and supervision, and his death would have been prevented.

51. As a direct and proximate result of Defendant Lehigh County's policies, customs, practices, and failures to train and supervise, Mr. Touchberry suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, Mr. Touchberry's family suffered mental anguish and the loss of his companionship, comfort, society, financial support, and guidance.

52. Plaintiff also makes a claim for such injuries, damages, and consequences resulting from the incident of which she has no present knowledge.

**WHEREFORE**, Plaintiff claims of Defendant Lehigh County a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and the allowable costs of suit, and brings this action to recover the same.

## COUNT III

### *MONELL* LIABILITY
### *MONELL* – PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF v. DEFENDANT PRIMECARE MEDICAL, INC.

53. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

54. At all relevant times, Defendant PrimeCare Medical, Inc., as a private corporation performing the traditional state function of providing medical and mental-health care to inmates and detainees confined at the Lehigh County Jail, acted under color of state law and is subject to liability under 42 U.S.C. § 1983 under the same standards applicable to municipal entities.

55. Defendant PrimeCare Medical, Inc. promulgated and maintained policies, customs, and practices, as pled at length above, which were the moving force that caused the violation of Mr. Touchberry's constitutional rights.

56. Defendant PrimeCare Medical, Inc. failed to adopt, adhere to, and enforce adequate protocols for the screening, identification, monitoring, and treatment of inmates and detainees facing a substantial risk of suicide and self-harm, including suicide-risk screening on intake and upon changes in condition; placement on and discontinuation of suicide watch and observation status; communication of an inmate's known risk between medical and corrections staff and across shifts; provision of timely mental-health evaluation and treatment.

11

57. Defendant PrimeCare Medical, Inc. failed to adequately train and supervise its medical and mental-health staff with respect to identifying, monitoring, and protecting inmates and detainees facing a substantial risk of suicide and self-harm, despite the obvious need for such training and supervision.

58. Defendant PrimeCare Medical, Inc. was on notice of the deficiencies in its policies, customs, and practices, including by reason of the prior in-custody deaths and lawsuits described above, as well as its own institutional knowledge of the risk of suicide in custodial settings, yet failed to take corrective action.

59. Defendant PrimeCare Medical, Inc. was deliberately indifferent to the known or obvious consequences of its policies, customs, practices, and failures to train and supervise, namely that inmates and detainees facing a substantial risk of suicide and self-harm, including Mr. Touchberry, would be deprived of their constitutional rights and would suffer serious injury or death.

60. Upon information and belief, PrimeCare's deficient policies, customs, and practices were driven in whole or in part by cost-saving measures that incentivized PrimeCare to provide the minimum level of care to inmates and detainees at LCJ, at the expense of their constitutional rights.

61. Had Defendant PrimeCare Medical, Inc. properly promulgated appropriate protocols, customs, and practices, and adequately trained and supervised its employees, Mr. Touchberry would have received appropriate medical and mental-health care, and his death would have been prevented.

62. As a direct and proximate result of Defendant PrimeCare Medical, Inc.'s policies, customs, practices, and failures to train and supervise, Mr. Touchberry suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, Mr. Touchberry's family suffered mental anguish and the loss of his companionship, comfort, society, financial support, and guidance.

**WHEREFORE**, Plaintiff claims of Defendant PrimeCare Medical, Inc. a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages,

delay damages, interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and the allowable costs of suit, and brings this action to recover the same.

## COUNT IV

**MEDICAL MALPRACTICE (PENNSYLVANIA LAW)**
**PLAINTIFF v. DEFENDANTS PRIMECARE MEDICAL, INC. AND MEDICAL PROVIDER JOHN DOE**

63. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

64. At all relevant times, Defendants PrimeCare and Medical Provider John Doe, by and through their physicians, nurses, mental health professionals, employees, and agents, undertook to render medical and mental health care to Mr. Touchberry and thereby entered into a healthcare provider–patient relationship with him.

65. Defendants PrimeCare and Medical Provider John Doe owed Mr. Touchberry a duty to possess and employ the degree of skill, knowledge, care, and diligence ordinarily possessed and exercised by reasonably competent medical and mental health professionals under like circumstances.

66. Defendants PrimeCare and Medical Provider John Doe, by and through their employees and agents, breached and deviated from the applicable standard of care owed to Mr. Touchberry by failing to perform an adequate intake medical and mental health assessment; failing to recognize, document, and respond to his known risk of suicide or self-harm and his serious mental health needs; failing to order and implement appropriate suicide precautions, observation, and treatment; failing to prescribe, administer, and monitor appropriate medication; failing to provide timely and adequate mental health evaluation and treatment; and failing to ensure adequate communication, continuity, and follow-up of his care.

67. Defendant PrimeCare is vicariously liable for the negligent acts and omissions of its physicians, nurses, mental health professionals, employees, and agents, including Defendant Medical Provider John Doe, committed within the course and scope of their employment or agency, under the doctrines of respondeat superior and ostensible agency.

13

68. As a direct and proximate result of the negligence and carelessness of Defendants PrimeCare and Medical Provider John Doe, Mr. Touchberry suffered conscious pain and suffering, emotional distress, fear, physical injuries, and death, and his family suffered the losses described herein.

WHEREFORE, Plaintiff claims of Defendants PrimeCare Medical, Inc. and Medical Provider John Doe a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, together with delay damages, interest, and the allowable costs of suit, and brings this action to recover the same.

## COUNT V

### WRONGFUL DEATH (PENNSYLVANIA LAW)
### PLAINTIFF v. ALL DEFENDANTS

69. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

70. Plaintiff, individually and as Administrator of the Estate of Forest M. Touchberry, deceased, brings this action on behalf of the beneficiaries under and by virtue of the Pennsylvania Wrongful Death Act, 42 Pa.C.S. § 8301, and the applicable Rules of Civil Procedure.

71. As a result of the conduct of all Defendants, as set forth herein, Mr. Touchberry was caused grave injuries and death, resulting in the entitlement to damages by the beneficiaries under the Wrongful Death Act.

72. Plaintiff, individually and as Administrator of the Estate of Forest M. Touchberry, deceased, claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral, and burial expenses and expenses of administration necessitated by reason of the injuries causing Mr. Touchberry's death.

73. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all services which the Decedent provided or could have been expected to provide in the future.

74. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all pecuniary loss suffered by the beneficiaries.

75. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all loss of comfort, society, companionship, guidance, and tutelage that the beneficiaries would have received from the Decedent but for his untimely death.

76. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for the full measure of damages, including punitive damages, allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

**WHEREFORE**, Plaintiff demands damages, including punitive damages, against all Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000) and in excess of local arbitration limits, exclusive of interest and costs.

## COUNT VI

### SURVIVAL ACTION (PENNSYLVANIA LAW)
### PLAINTIFF v. ALL DEFENDANTS

77. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

78. Plaintiff, as Administrator of the Estate of Forest M. Touchberry, deceased, brings this Survival Action on behalf of the Estate of Touchberry under and by virtue of 42 Pa.C.S. § 8302, and the applicable Rules of Civil Procedure and the decisional law interpreting said Act.

79. As a result of the negligence and deliberate indifference of all Defendants as set forth herein, Mr. Touchberry was caused grave injuries and death, resulting in the entitlement to damages by his Estate under the Survival Act.

80. As a result of the death of Mr. Touchberry, his Estate has been deprived of the economic value of his life expectancy, and Plaintiff claims under the Survival Act damages for all pecuniary losses suffered by the Estate as a result of the Decedent's death, including all loss of income, earnings, retirement income, benefits, and Social Security income.

15

81. The Administrator further claims, under the Survival Act, the total amount that the Decedent would have earned in the future, minus the costs of personal maintenance.

82. The Administrator further claims, under the Survival Act, damages for the conscious pain and suffering endured by the Decedent prior to his death, including physical pain and suffering, and mental pain and suffering leading to his death.

83. The Administrator further claims, under the Survival Act, all damages, including punitive damages, recoverable pursuant to 42 Pa.C.S. § 8302, and the decisional law interpreting said Act.

**WHEREFORE**, Plaintiff demands damages, including punitive damages, against all Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000) and in excess of local arbitration limits, exclusive of interest and costs.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each Count and each Defendant.

Date:  July 21, 2026

Respectfully submitted,

/s/ Brian J. Zeiger
Brian J. Zeiger, Esquire (PA ID No. 87063)
/s/ Laura Zipin
Laura Zipin, Esquire (PA ID No. 324914)

**Levin & Zeiger LLP**
Two Penn Center
1500 JFK Boulevard, Suite 620
Philadelphia, PA 19102
(215) 546-0340
zeiger@levinzeiger.com
zipin@levinzeiger.com
*Counsel for Plaintiff*